# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| STEPHEN J. GRABOWSKI, JR. | ) | |
| | ) | |
| Appellant/Claimant-Below, | ) | |
| | ) | |
| v. | ) | C.A. No. N18A-02-005 CEB |
| | ) | |
| J.J. WHITE, INC. | ) | |
| | ) | |
| Appellee/Employer-Below. | ) | |

Submitted: August 9, 2018
Decided: November 28, 2018

## MEMORANDUM OPINION

*Upon Consideration of Industrial Accident Board Appeal.*
**AFFIRMED.**

Gary S. Nitsche, Esquire, and Katherine L. Hemming, Esquire, Gary S. Nitsche, P.A., 305 North Union Street, P.O. Box 2324, Wilmington, DE, 19899, Attorneys for Claimant-Below, Appellant.

John J. Ellis, Esquire, Heckler & Frabizzio, 800 Delaware Avenue, Suite 200, P.O. Box 128, Wilmington, DE 19899, Attorneys for Employee-Below, Appellee.

**BUTLER, J.**

## INTRODUCTION

This is an appeal from a ruling by the Industrial Accident Board ("IAB"). The grounds for appeal are based upon a single evidentiary ruling and a complaint that the decision is not supported by substantial evidence. Finding neither claim to be meritorious, the Court will affirm the finding of the IAB.

## FACTS

Steven Grabowski, Jr. was injured in an assault that occurred at his work in 2000.[1] There is no dispute that it was a "work related injury" compensable under the Worker's Compensation system.

From 2001 to 2017, Grabowski underwent surgery on his back in 2001 and again in 2005. In 2014, he had a third surgery to remove lumbar hardware, presumably left from the earlier surgeries. Although he did not testify at the IAB hearing, the Board was told that Grabowski has expressed a disinclination to undergo any further surgery to improve his condition.[2]

---

[1] Balu Dep. 5:12-21.

[2] Balu Dep. 13:16-24.

1

Since 2001, Grabowski has been a patient of Dr. Balu.[3]  Dr. Balu is a pain management specialist with a practice in Dover.  For a "very long time," the primary treatment for the Claimant has been Percocet, a narcotic drug.[4]

While this certainly seems like a long time to be prescribed a narcotic, Dr. Balu testified that he administered a DAST – 10 Opiate Risk Assessment tool that showed the Claimant to be at low risk for abuse of the drugs he was being prescribed. Thus, Dr. Balu saw no reason to curtail or alter the ongoing treatment.[5]

Also practicing with Dr. Balu was a chiropractor, Dr. Brian Broskoski.  The Claimant thus received narcotics as well as massages, stretching, and related treatment through the chiropractor.  Finally, Dr. Balu created a compound topical mixture that he prescribed for Grabowski's pain.[6]

Despite these various treatments, the record reflects no instance in which the Claimant's reported pain was less than a "7" on a scale of "1 to 10".[7]  In addition, any improvement in his mobility can only be described as modest.  For example,

---

[3] Balu Dep. 5:22-24.

[4] Balu Dep. 13:5-9.

[5] Balu Dep. 17:17-18:10.

[6] Balu Dep. 22:18-24:22.

[7] Balu Dep. 26:20-24.

after a therapy session, he reported that he could now sit for thirty minutes, whereas before he could only sit for fifteen minutes.[8] He could sleep for four hours, but after therapy he could sleep for five hours.[9]

## PROCEDURAL HISTORY

The employer sought a "Utilization Review" of both Dr. Balu's prescription treatment and Dr. Broskoski's chiropractic treatment.[10] While that record is not before the Court, the Claimant prevailed, which set up the *de novo* review by the IAB.

The IAB held its *de novo* hearing, as a result of which it reversed the findings of the Utilization Review. The IAB concluded that the opioid and chiropractic treatments were not reasonable and necessary and ordered that Grabowski be weaned from the current treatment of narcotic drugs.[11]

## STANDARD OF REVIEW

When reviewing a Board decision, we review for errors of law and substantial evidence to support the Board's factual and legal findings. "Absent error of law, the

---

[8] Balu Dep. 34:17-19.

[9] Balu Dep. 35:17-20.

[10] *See generally* 19 Del. C. § 2322F(j).

[11] Op. Below 17-21.

standard of review for a Board's decision is abuse of discretion."[12] Moreover, "The appellate court 'does not sit as a trier of fact with authority to weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions.' Those functions are vested in the IAB."[13]

## ANALYSIS

In the proceedings before the IAB, the employer produced its own expert, Dr. Schwartz, also a pain specialist. In addition to a review of Dr. Balu's treatment records, Dr. Schwartz examined the Claimant twice before concluding that Grabowski was exaggerating his symptoms and that the treatment rendered thus far has been ineffective in improving the Claimant's condition. Schwartz further believed that the compound creams prescribed were ineffective and indeed, not supported by the medical literature.[14] In Dr. Schwartz' view, the Claimant should be weaned off his narcotic medications over a period of time and he should be treated with non-narcotics and holistic medical approaches more likely to produce positive results.

---

[12] Person-Gaines v. Pepco Holdings, Inc., 981 A.2d 1159 (Del. 2009).

[13] *Glanden v. Land Prep, Inc.,* 918 A.2d 1098, 1100—01 (Del. Supr. 2007).

[14] Hr'g Tr. 25: 3-23.

4

There was one issue at the hearing that evolved into an issue now before the Court. In order to prevail before the IAB, the employer bore the burden of showing that the treatment was not "reasonable and necessary."[15] The employer sought to be relieved of that burden, arguing that Dr. Balu had used boilerplate language in his certifications of reasonableness and necessity and that use of such boilerplate in the certification should act as a waiver of any presumption that the record was accurate or true.[16]

This issue got wind in its sails during the deposition of Dr. Balu, which took place before the hearing. Employer's counsel cross-examined Balu on numerous entries in Claimant's chart that recited "that he continues to need the medication to manage his current level of function for his activities of daily living and quality of life."[17] Balu admitted that this language was indeed boilerplate, necessitated by the worker's comp rules for certification and payment and that the statements did not

---

[15] *See* 19 Del. C. §2322C (6) ("Services rendered by any health-care provider certified to provide treatment services for employees shall be presumed, in the absence of contrary evidence, to be reasonable and necessary if such services conform to the most current version of the Delaware health-care practice guidelines").

[16] Hr'g Tr. 38:10-19.

[17] Balu Dep. 15:10-14.

necessarily reflect a separate, independent conversation with the Claimant on every visit.[18]

From that deposition transcript, we also learn that the employer's attorney and Dr. Balu had crossed paths just a few weeks earlier, in a different case, in which Balu had likewise agreed that this was boilerplate language.[19] For whatever relevance it had then, Claimant's counsel's only complaint at that time was that he did not have a copy of the earlier deposition transcript.[20]

But, returning to the reason all of this was raised below, employer's counsel sought introduction of the pages of transcript from this earlier, unrelated deposition in which Balu had testified to the use of a boilerplate certification. Claimant's counsel objected on grounds of relevance.[21] Amplifying his point, Claimant's counsel urged, "I'm not sure how another transcript in a case that's pending before the Board is admissible as an exhibit."[22] In overruling the objection, the Board

---

[18] Balu Dep. 83:1-11.

[19] *Id.*

[20] Balu Dep. 80:18-24.

[21] Hr'g Tr. 41:14-16.

[22] Hr'g Tr. 42:11-23.

agreed to accept it conditionally: "We'll give it the weight when the time comes, after we hear all the medical opinions in this case."[23]

Exactly what weight the Board gave this line of attack on the burden of proof is demonstrated in the Board's decision, which holds: "The Employer White carries the burden of proof and must demonstrate by a preponderance of the evidence the medical treatment at issue is not reasonable and necessary."[24]

Had the employer succeeded in shifting the burden of proof on the basis of the use by Claimant's physician of boilerplate language in a medical document, we would surely be plowing new legal ground. But that did not happen. The employer lost the argument. Now, despite winning the point below, Claimant seeks further relief by reversal of the decision on its merits.

Moreover, even without the disputed "other hearing" testimony, it is not as though Dr. Balu denied using boilerplate language in his certifications. He agreed that it is used. The testimony to the same effect from a different case was at best makeweight.

Grabowski now argues that the entry into evidence of the transcript pages from the different deposition violated rules of pretrial or IAB procedures. These issues were not raised before the IAB; the only issue raised was relevance – an issue

---

[23] Hr'g Tr. 44:8-10.

[24] Op. Below 14.

7

on which Grabowski clearly prevailed. He cannot now be heard to complain that he is entitled to a new hearing on the same basis. That argument must be considered waived.

## SUBSTANTIAL EVIDENCE

Claimant's remaining argument need not detain us long. He says that the Board's decision is not supported by substantial evidence. The argument is essentially one alleging "improper" conclusions and a "misconstrual" of the evidence.[25] The record demonstrates quite clearly that the Board chose to credit the testimony of Dr. Schwartz and not the deposition testimony of Dr. Balu. There was nothing improper about doing so. Dr. Balu's 16 year course of treatment resulted in very little diminution of the Claimant's pain, but did almost surely make him opioid dependent, a condition even Dr. Balu agreed would take substantial time to remediate.[26] That the Board concluded this treatment was not reasonable and necessary is hardly a shock.

---

[25] Opening Br. 26—27.

[26] Balu Dep. 73:5-24.

8

## CONCLUSION

The Court finding no error of law in the proceedings below and the decision free from abuse of discretion, the decision of the IAB must be **AFFIRMED.**

**IT IS SO ORDERED.**

_____
Charles E. Butler, Judge