**Joseph REESE, Claimant
Below, Appellant,**

v.

**HOME BUDGET CENTER, Employer
Below, Appellee.**

Supreme Court of Delaware.

Submitted: Nov. 17, 1992.
Decided: Dec. 23, 1992.

Frederick T. Haase, Jr. (argued), Haase & Kelly, Wilmington, for appellant.

Michael P. Freebery (argued), Prickett, Jones, Elliott, Kristol and Schnee, Wilmington, for appellee.

Before MOORE, WALSH, and HOLLAND, JJ.

WALSH, Justice:

This is an appeal from a decision of the Superior Court that affirmed a denial by the Industrial Accident Board ("Board") of a claim for medical payments asserted by the appellant, Joseph Reese ("Reese"). The Board ruled that Reese's treatment for the emotional effects of an earlier industrial accident were not linked by substantial causation. We conclude that the Board applied an erroneous standard of recovery for the emotional effects of an industrial accident and that the Superior Court erred in the affirmance of that application. Accordingly, we reverse.

I

There is no dispute concerning the origin of Reese's physical disability. On February 5, 1990, while employed by Home Bud- get Center, Reese sustained a lower back injury delivering a mattress. He subsequently filed a petition with the Board which resulted in the receipt of temporary total disability benefits from the date of the accident until June 14, 1991. In addition, his employer's compensation carrier agreed to pay for all medical expenses related to treatment of his back injury. The carrier, however, refused to pay for any expense attributable to psychiatric treatment for emotional and anxiety problems which Reese began to experience approximately five months after the accident. Upon the refusal of the carrier to pay for these psychiatric expenses, Reese filed a second petition with the Board to require such payments.

The evidence presented to the Board consisted of the testimony of the claimant and the deposition testimony of two psychiatrists, Dr. Harold Graff, Reese's treating psychiatrist, and Dr. Steven Mechanick who testified for the carrier. Reese testified that prior to the accident he had never been treated for any emotional or mental impairment. During his adolescence, however, Reese had abused drugs and alcohol but claimed to have been addiction free for more than a year before his injury. Following his accident, Reese became severely depressed, withdrawn and anxious about his loss of employment, including the termination of his service with the National Guard attributable to his back injury. He experienced marital difficulty and at one point contemplated suicide. His emotional condition also manifested itself in dizziness, insomnia and physical symptoms which caused him to believe he was experiencing a heart attack. In October, 1990 he consulted Dr. Graff.

On his first visit, Dr. Graff found Reese to be nervous, restless and unable to concentrate. His treatment included psychotherapy, sleep medication and anti-depressant drugs. Later Dr. Graff admitted Reese to a private psychiatric hospital where he continued to display signs of agitation and nervousness. Dr. Graff discharged Reese as asymptomatic on June 5, 1991. His final diagnosis was that of post-

traumatic stress disorder and panic disorder.

Dr. Mechanick, who examined Reese at the request of the compensation carrier, agreed that Reese suffered from "several psychiatric disorders" during the period following his accident. He was of the view that Reese suffered from a panic disorder characterized by severe episodes of acute anxiety with accompanying symptoms but no identifiable physical cause. He also diagnosed two somatoform pain or conversion disorders with leg numbness and spinal muscle pain without a physical basis. Dr. Mechanick disagreed with Dr. Graff's diagnosis of posttraumatic stress disorder because, in his view, Reese had sustained no traumatic event sufficient to produce such a disorder.

As to the panic disorder and somatoform pain disorder, Dr. Mechanick opined that Reese's biological makeup predisposed him to that type of emotional reaction. Given Reese's prior alcohol and drug abuse and the emotional experience of the murder of his brother's wife, with whom he was intimate, his industrial accident provided a setting for the manifestation of his disorder. Dr. Mechanick did not believe that the accident was a substantial causative factor for the panic disorder.

The Board rejected the claim for psychiatric expenses, ruling that Reese had failed to establish a causative link between his back injury and the emotional aftermath. On appeal the Superior Court affirmed.

## II

■ In its decision rejecting Reese's claim for the expense of psychiatric treatment, the Board noted that "[b]oth psychiatrists believe that claimant had a panic disorder" but disagreed concerning the connection between the back injury and its emotional aftermath. The Board resolved the clash of expert opinion by accepting the view of Dr. Mechanick that Reese did not suffer a posttraumatic stress syndrome and that the panic disorder and somatoform pain disorder he experienced were attributable more to his physiological/biological makeup than to the accident. The Board also adopted Dr. Mechanick's explanation that the accident provided a setting or vehicle for causing a latent condition to become overt. Despite the concurrence of expert testimony linking the lower back injury to the subsequent emotional conditions, the Board, through application of a standard of "substantial cause," ruled the claim not compensable. Relying upon this Court's opinion in *Duvall v. Charles Connell Roofing*, Del.Supr., 564 A.2d 1132 (1989), the Board ruled that the work accident must be "the substantial cause of the claimant's psychiatric condition" in order for the expenses of treating that condition to be compensable. In so ruling the Board misapprehended the application of *Duvall* and applied an erroneous legal standard. In affirming the Board's conclusion on the same rationale the Superior Court compounded the error.

There is no dispute that Reese suffered a compensable injury within the purview of the Delaware Workmen's Compensation Law. 19 *Del.C.* Ch. 23. Indeed, he has been fully compensated for the physical effects of that injury. At issue here is the extent of compensability for the non-physical or psychological consequences of a physical injury and, more importantly, the required nexus between the two.

■ The term injury is broadly defined for workers' compensation purposes:

"'Injury' and 'personal injury' mean violence to the physical structure of the body, such disease or infection as naturally results directly therefrom when reasonably treated and compensable occupational diseases and compensable ionizing radiation injuries arising out of and in the course of employment."

19 *Del.C.* § 2301(12).

Although this definitional provision makes no distinction between the physical and psychological consequences of "violence to the physical structure of the body," it is now accepted that an injured worker may recover for the full effect of injury including "resulting psychological or neurotic disorder." *Rice's Bakery v. Adkins*, Del. Supr., 269 A.2d 215, 216–217 (1970). *See*

*also Sears, Roebuck & Co. v. Farley,* Del. Supr., 290 A.2d 639, 640–641 (1972).

The Board, of course, was free to choose between the conflicting diagnoses of Dr. Graff and Dr. Mechanick and either opinion would constitute substantial evidence for purposes of appeal. *DiSabatino Bros., Inc. v. Wortman,* Del.Supr., 453 A.2d 102, 105–106 (1982). Thus, the Board was entitled to rely upon Dr. Mechanick's opinion that Reese did not suffer from traumatic neurosis but from a somatoform pain disorder. The Board erred, however, in requiring proof that Reese's industrial accident be the substantial cause of any psychological disorder which followed the accident.

■■■ A preexisting disease or infirmity, whether overt or latent, does not disqualify a claim for workers' compensation if the employment aggravated, accelerated, or in combination with the infirmity produced the disability. *General Motors Corp. v. McNemar,* Del.Supr., 202 A.2d 803, 806–807 (1964). *See also* 1A Arthur Larson, *Workmen's Compensation Law* § 12.21. In work-related claims, as in personal injury claims sounding in tort,[1] the employer takes the employee as he finds him. *Id.* The liability of an employer is not limited to injuries which a physically able and mentally sound employee would sustain in similar accidents. *Parks v. Sheller–Globe Corp. Hardy Division,* 177 Ind.App. 498, 380 N.E.2d 110 (1978). If the injury serves to produce a further injurious result by precipitating or accelerating a previous, dormant condition, a causal connection can be said to have been established. *Harbor Insurance Company v. Industrial Commission,* 25 Ariz.App. 610, 545 P.2d 458 (1976).

Although the Board acknowledged that Dr. Mechanick concluded that Reese suffered from a psychological disorder following the accident, it did not consider the disorder compensable because Dr. Mechanick considered the accident a mere "setting" or "trigger" for the manifestation of the psychological rather than a "substan-

tial cause." In this context, the Board's application of the term "substantial cause" imposed upon the claimant a standard of proof equivalent to that imparted by the concept of "substantial factor" in a conventional tort setting. In *Culver v. Bennett,* Del.Supr., 588 A.2d 1094 (1991), this Court found error in the use of the term "substantial factor" in a jury instruction defining proximate cause. In noting that there can be more than one proximate cause of an injury, we reaffirmed our adherence to the "but for" rule, *i.e.* a "defendant's conduct is a cause of the event if the event would not have occurred but for that conduct; conversely, the defendant's conduct is not a cause of the event, if the event would have occurred without it." *Id.* at 1097 (quoting Prosser and Keeton on Torts).

■■■ The "but for" definition of proximate cause in the substantive law of torts finds equal application in fixing the relationship between an acknowledged industrial accident and its aftermath. If the worker had a preexisting disposition to a certain physical or emotional injury which had not manifested itself prior to the time of the accident, an injury attributable to the accident is compensable if the injury would not have occurred but for the accident. The accident need not be the sole cause or even a substantial cause of the injury. If the accident provides the "setting" or "trigger," causation is satisfied for purposes of compensability.

■■■ The Board believed the causation issue was controlled by this Court's decision in *Duvall v. Charles Connell Roofing,* Del.Supr., 564 A.2d 1132 (1989) from which it borrowed the phrase "substantial cause." *Duvall* does not control the result here. In *Duvall* this Court reexamined the decisional underpinnings of the "unusual exertion" rule, which limited compensation for aggravation of preexisting injuries to situations involving unusual exertion, *i.e.,* incidents beyond the ordinary stress and strain of

---

**1.** The rule that the defendant takes the plaintiff as he finds him, or the "thin skull" or "eggshell skull" rule, is a longstanding principle of Delaware tort law. *Lipscomb v. Diamiani,* Del.Su-

per., 226 A.2d 914, 918 (1967) ("[I]t is traditional that the defendant take the plaintiff as he finds him ...").

employment. In rejecting the unusual exertion rule as judge made law without a sound decisional basis, this Court used the term "substantial cause" to describe the condition of employment which must provide the causative nexus for compensability. *Duvall,* however, employed the concept of substantial cause because of the difficulty of identifying a specific link between regular job-related duties and the aggravation of preexisting ailments. No such quest is implicated, however, where, as here, the claim for compensation is linked to a specific undisputed work related accident. It is thus unnecessary to quantify causation where there is no dispute that a specific accident contributed to the condition and "without which the [injury] would not have occurred." *Culver v. Bennett,* 588 A.2d at 1097.

■ We conclude that the term "substantial cause" as applied in *Duvall* is limited to claims arising out of the ordinary stress and strain of employment. It has no application to causation relating to specific and identifiable industrial accidents.

The decision of the Board denying benefits for the expense of treatment for Reese's psychiatric condition is erroneous as a matter of law in view of the conceded relationship between the accident and its emotional aftermath. Accordingly, the decision of the Superior Court is REVERSED and this matter is REMANDED with direction to the Superior Court for a further remand to the Board for the entry of an award consistent with this decision.